and we'll take up Kupke v. the Director of the Office of Workers' Compensation Programs. May it please the Court, I am Joshua Glellen, appearing on behalf of the Barnett firm here. Entirely apart from the absurdity of the extent of this fee litigation demonstrated by the ALJ's 87 pages of single-space 12-point type devoted to this, and from the character of AIG's litigation approach here, which is adequately addressed by the ALJ's decision, the third full paragraph on page 84 of the record. The ALJ's search for extra record evidence violated the Administrative Procedures Act and denied the Barnett firm any opportunity to opine on what particular decisions, fee decisions of the Southern District of Florida would be most comparable to this. So your complaint is you didn't have notice that she was relying on these decisions? Actually, the complaint goes, that's our secondary complaint. You didn't have an opportunity to contest the decisions she relied on? Correct, but I also think... So if you had, how would you have contested the decisions she relied on? We would have examined the records of individual cases from the Southern District of Florida to see who was comparable counsel and who was not, and to see what the rates, in the great majority of the cases the ALJ cited, the rates awarded were the rates requested. Could you have moved for reconsideration once the ALJ issued the decision? Well, with 40 obscure district court decisions that had not been addressed before, and the very short time window to seek reconsideration from an ALJ, and the ALJ's reluctance, perhaps refusal, to grant extensions of the 10-day limit from the time of filing, not even from the time of receipt. But the procedures do allow for you to raise this issue in reconsideration. Well, wait a minute. I see here that you've now cited to all these other cases. I haven't had a chance, so give me a chance to look at these cases and to make a different argument to supplement the record. I think... You could have done that, right? Yes, could have done that. On the other hand, the opportunity to address the fact finder on reconsideration after the fact finder has already examined that evidence and arrived at a conclusion is simply not the same as the opportunity to address that evidence before the fact finder has already examined it  It's not impossible to present the response, although 10 days is not reasonable. But what do you want? Do you want us to... I mean, what are you... What relief are you requesting? I mean, the only thing we could do would be send it back to her and give you a chance to argue those cases in front of her, which is the same relief Judge Winsing could have had in front of her. I'm happy to say that Judge Gee has now retired, so we will not be before her if we have a remand. We'll have another ALJ who perhaps will be more able than she would have been to take a fresh look at the district court decisions and see what the most relevant ones are. So, yes, we would seek only a remand, and that would give us the opportunity to address what decisions of the Southern District of Florida are most relevant, which we have not had. How is what the ALJ did different than what a court does if the court decides that the parties missed cases or precedent that's relevant and important to the decision and goes ahead and considers that and that's made clear to the parties in the decision that the court actually issues? How is it different? Because this is not precedent. This is absolutely not judicial precedent. This was judicial fact-finding. As I say, in the great majority of cases, it was simply the rate that was requested that was awarded. So it doesn't tell us what that, even what that fact-finder would have arrived at if it had been, if a different amount had been requested. Why couldn't she reasonably infer if this is the amount requested that that was the generally prevailing rate in the Southern District of Florida? I'm sorry. I missed the very beginning. Why couldn't you, why wasn't she entitled to reasonably infer that the amount requested was the amount that was, you know, prevailing rates in the community? Well. Why does that, in other words, why does that undermine the fact that that was what was awarded in 40 cases? I mean, an attorney is going to request what they think is the prevailing rate. That's what they're supposed to do, right? Yes. And what's the prevailing rate also depends on the type of client. And I don't mean whether it's an affluent client or an impecunious one. I mean whether it's a single litigation matter client or an institutional client that commands a great deal of legal work. The court has noted before in some longshore cases that the rates charged by insurance companies for the same kind of litigation are not relevant to what the market rate would be for the claimant who has a single litigation matter. Right. But I guess I'm still struggling to see what's wrong with the ALJ's approach in this matter. Now, had the ALJ said, well, I'm not satisfied with your showing in your briefs. Both parties basically have submitted deficient information. So I'm going to go outside. I'm going to look at these cases. And that's it. I'm going to rely on them instead. That might present a bit of a different record. But in this particular case, the ALJ said, all right, well, I'm not satisfied. But I'm going to look at what these district judges who are more familiar with the market, just to get a sense of what the market is like. But I fully recognize that it's not directly on point because of the information in there. There are factors, comparisons of skills, for example, are not easily made. The predominant factors such as practice areas and years of experience, I realize there are limitations in relying on that sort of information. But I'm just using this to get a sense of what the market is like. I just don't see what's wrong with that. I think it's no better than a juror who, during a break, goes out to look at the scene of the accident. The fact finder cannot go on a free-ranging search for additional evidence because that fact finder is unsatisfied. I mean, I think it has to do with the procedures under the APA, right? There's certain procedures for looking at extra judicial, I mean, extra record facts under the APA. Yes. That's what brings this case into a different situation than a judge just doing what Judge Wynn described because a judge isn't ordinarily governed by the procedures of the APA. Yes, and she was bound by those procedures and violated. My point is almost so I would take Judge Wynn's argument and say, but why isn't this harmless error? Because she could always reject your arguments. Oh, well, that was what you just awarded what was requested. Or I have no idea what your other arguments were because you haven't answered my first question of you, which was what would you have argued vis-à-vis these cases? We would have argued that the cases that she picked were not reflective of relevant market rates, that the attorneys involved did not have the degree of experience, did not practice in the very unusual and rare legal subject matter that was involved in this case, but were more general lawyers, which therefore do not command the same premium rates that specialists do. You know, I have not tried before this court to parse the decisions the ALJ relied on. Did you bring those arguments up in your administrative appeal? Yes. I think that it wasn't the only issue presented to the Benefits Review Board, but, yes, it was presented. And in particular, once the ALJ, once the Benefits Review Board, excuse me, had decided the Yunus and Abbasi cases, which involved an ALJ doing exactly the same thing to the same law firm. Well, it wasn't the exact same thing, was it? In those cases, they were like cherry-picked cases. Here, there was much more of an extensive study conducted. It is certainly true that ALJG gave much more of an explanation of what she was doing and tabulated this large number of cases from the Southern District of Florida than the ALJ, in Yunus and Abbasi, who had only set forth, I believe, eight cases without as much explanation as Judge Gee gave of what she found relevant, although there's not really much description in her decision of which ones she found most relevant. But she did set forth the extent to which some few of those decisions had mentioned how much experience the attorney had, which was one main feature. But she did not examine, as I say, the degree of specialization of those attorneys. We could have gone into those things. We could have found cases that we thought were more relevant than the ones that she actually ended up relying on. But we did not have that opportunity. So the procedures in the APA that you're relying on for notice and an opportunity to address these decisions hinges on whether the ALJ took official notice of those decisions, right? Yes, yes. All right, so official notice is defined as you're treating something as conclusive. A fact is conclusively established. How is what she did here, treating these cases as conclusive, when she looked at a bunch of them and then she still did her own analysis of this case and the attorneys involved in this case? She certainly did the latter. She made her analysis of the attorneys in this case and found deficiencies in their performance, which I think the Supreme Court has pretty clearly told us in Kenny A, adjustments based on performance in the individual case are to be reserved for extraordinary circumstances. She didn't cite anything that was extraordinary. Rates are not based on after-the-fact evaluation of your performance in the individual case. They're based on your reputation and your degree of experience. And, of course, in the same decision, the ALJ has rejected the fee awards that the Barnett firm relied on on the grounds that they were not made under Ninth Circuit law. This isn't relevant because I can't tell that it wasn't made under Ninth Circuit law. Now, I don't know what the supposed divergence of this Court's authorities on fee setting is supposed to, from other circuits, is supposed to be. But both the ALJ and both counsel for AIG have referred obliquely to such differences. I don't think they're there, but if they are, then the grounds on which the ALJ discredited the fee decisions that the Barnett firm submitted also disqualify her reliance on the Southern District of Florida rate setting. Now, again, I don't think that's true. I don't know of any divergence between Eleventh Circuit fees. But didn't she consider your argument that the kind of work that you were doing or the Barnett firm was doing was more sophisticated than other work? Did she take that argument into account? Yes. Well, she mentioned it, yes. But when she got to the determinative paragraphs of her order, she didn't just use those as background, those Southern District of Florida decisions as background. She kept saying, she said a couple of times, and the Respondents say repeatedly, that she just used them as background or as context. It's not true. The rates that she awarded were based directly on what each of the paragraphs directed to each of the billing individuals, just cited to the range in the Southern District of Florida decisions. That's all she relied on. So I don't know what this business is about just looking at it for context. She didn't. She used those as determinative rates. And the point about judicial notice being restricted to, or official notice, being restricted to facts that are apparently incontrovertible, that's all very nice. But that's not what this was. She wasn't taking it. She was taking official notice of extra record evidence that was certainly not conclusive. And she didn't pretend that it was conclusive. That means it's not a proper subject of official notice. And any time you take, you rely on factual evidence that's outside the record, you're taking official notice of that evidence, whether you're taking it as conclusive or whether you're exclusively establishing the facts or not. Now, what she ended up doing was relying exclusively on those. So, yes, she did effectively treat them as conclusive on the question. All right. Thank you, counsel. You're well over your time. Good morning, Your Honors. May it please the Court. I am Monica Markovich, appearing on behalf of Service Employees International, Inc., and the insurance company of the State of Pennsylvania. With the Court's permission, I will share seven minutes of the Respondent's time with Mr. Ray Warnes. And who does he represent? He represents Floor, an insurance company of the State of Pennsylvania, Your Honor. The other employer with AIG combination. All right. I'm just curious how your arguments would differ. We'll find out. Thank you, Your Honor. I will be arguing why it was appropriate for Judge Gee to look to the Southern District of Florida for information about the market rate. I will be arguing how the petitioner had an opportunity to address that information, even without express permission from the judge. And I will also be arguing why even if those two points were in error, they were harmless error. Did you make a harmless error argument in your briefs? We did not, and we greatly appreciate the Court's bringing that to our attention, because any error here was harmless. Within the Longshore context, regardless of the way that the Court gets to the end, as long as that end is supported by substantial evidence in the record, any error along the way is harmless. It's a different standard than in the Kazarian case, but there's similarities to that case, which we appreciated your bringing that to our attention. Like in Kazarian, Kazarian wanted a visa. Petitioner wanted $485 an hour. Kazarian did not put forward adequate evidence in support of his visa request. Here, petitioner did not put forward adequate evidence in support of his rate request. Along the way, there was a question as to how the agencies interpreted the evidence. And in Kazarian, it was determined that the agency was wrong, but even so, Kazarian hadn't put forward enough evidence. Here, petitioner, if we believe that Judge Gee was wrong with turning to the Southern District of Florida, or that she was wrong in finding his evidence inadequate, we still get to the end result, which is that there's substantial evidence in the record to support the rate awarded. Now, what Judge Gee did was she looked at Christensen, this Court's Christensen case, and she looked at the petitioner's evidence to see if he had met his burden of proof. She looked at where the community was, when the rates should be determined based upon, which was the 2013 to 2016 time period. She looked at who was doing the work, relying upon the petitioner's information, and what they were doing. She applied that information within the Christensen context and determined that the petitioner fell short. And he fell short in several ways, including the recency of the information and the lack of reference to other types of cases, other types of fee-shifting cases. With respect to relevancy, the Court turned to more recent Defense-Based Act decisions. With respect to the market rate, she looked to the petitioner's requested community, which she calls South Florida. She looked to the Southern District of Florida. And here she didn't just look to private information. She looked to publicly available court cases of the prevailing rate, which she determined to be similar in terms of the years of experience of the petitioner, the number of different people within the firm involved, and also these are different types of cases, but of a similar skill. And what this Court has said in several cases, including Christensen, is we have to describe with particularity, with specificity, that analysis, so that this Court can conduct a meaningful review. Judge Gee's specificity goes on from excerpts of the record 18 to 46. She goes through in detail the evidence. Clearly, after she issued her decision, is there a process where you can move for reconsideration? Yes, Your Honor. That is in 29 CFR 18.93. There is a motion for reconsideration that is available to all parties. And Your Honor's brought up that 10 days seems short, except this is workers' compensation. The deadlines are short. And we all know, experienced practitioners know, that once there's a decision in order of a judge, which we can now receive by email, so we receive it before we even begin day one, we all know that we have 10 days to pay, or there's a 20% penalty, and we all know that we have 10 days for a motion for reconsideration. And that goes to the point of, this petitioner had an opportunity to say, wait, I would like to talk about this information. I would like to offer more. I'm sorry? So just assume, as a hypothetical, that when she says, reviewing the awards from the Southern District of Florida, as well as petitioner's background, I find that the relevant market range is 350 to 400, that that's deeming that as conclusive evidence of the prevailing market rate in Florida. So she says this in her decision. And so 29 CFR section 18.201 says, opportunity to be heard. The request for an opportunity to be heard may be made after official notice has been taken. So given that that's how this procedure works, does that mean that the request for an opportunity to be heard on that evidence should have been made in the context of a motion to reconsider? I believe it could have been made in the context of a motion to reconsider. I believe petitioner could have also called it some other type of motion. I think that the petitioner should have acted within 10 days. 18.201 says that this judge could take official notice at any stage of the proceeding, which means she's not precluded from taking official notice within her decision and order, which if we consider that to be official notice, as opposed to relying on those cases versus cases relied on by petitioner or respondent, right? Much like relying on Hensley versus Perdue or Vansky versus... Well, the problem I have with that, and I'll just be frank, is there may be some disagreement among the judges, but the problem I have with that is that it's a fact that she took notice of, and I view it as conclusive because she said, I find that this is the prevailing market rate based on her review of those cases. So that being said, given that there is an opportunity to be heard provided, you can't really say that they didn't have an opportunity to be heard. If it's official notice, if these are facts and not law, and I appreciate that's somewhat gray here, if it's official notice, then she was right to take it when she did because she can do it at any stage of the proceeding, and on request, the petitioner should have had an opportunity to comment, but he didn't request an opportunity, and because he didn't request an opportunity, we can't simply reverse this saying he wasn't given an opportunity. The judge did not have to explicitly give the petitioner an opportunity because it existed. It existed in 18201, and it existed in 1893. And am I clear on this record, is it correct that the Burton firm also did not raise it to the board? Did they make this argument to the board? It was within the arguments raised to the board that they should be allowed notice. Yes, I do think it's up and it's correct for everyone to decide today. But they didn't, in saying we should have been given notice, make particularized arguments about those cases, the 40 cases, and why that they were defective or shouldn't have been considered. Is that right? That's correct. They didn't offer information or evidence on those 40 cases. They simply said based on Unice and Abbasi, this case should be remanded, and the board disagreed because this is not like Unice or Abbasi. Judge Gee went to such a further extent to describe those cases. So I'm just wondering whether this isn't a case where you'd look at harmless error, maybe you'd look at waiver as they waive their right by failing to ask for an opportunity to be heard before Judge Gee or making those arguments before the board. I don't know. I'm just struggling with the best framework to look at those cases. For the petitioner to not ask for an opportunity to be heard on those cases and then complain about it today seems very inconsistent. The petitioner had an opportunity to comment. It was within the motion for reconsideration period. If the petitioner wanted an opportunity, the petitioner should have asked for one at that point in time, as opposed to appealing the case up. And I appreciate that my time is out. And so... We asked a lot of questions. I'm happy to answer more. We have a second advocate to question. Good morning, Your Honors. My name is Raymond Warrens, and I represent Floor and its carrier insurance company in the state of Pennsylvania. And there is a very distinct difference between the two respondents. They are different entities under the law. And Floor has its own interests as distinct to Service Employees International. But in this matter, our interests mirror each other. When counsel for Mr. Barnett... Counsel, I have a question for you just right out of the box before we get to some of these other issues that you're likely to get questions about. So the CFR that we're talking about that talks about having notice and an opportunity to be heard says that this rule governs only official notice of adjudicate of facts. So the parties, neither one, I don't think, addressed adjudicate of facts versus presumably the opposition would be legislative facts. Those are the two sort of corollaries in evidence law. What do you make of that? Well, Your Honor, the judge made clear on page 38 of her decision that she was not taking official notice or judicial notice. She was looking towards that number of cases for some guidance for an overall... I don't think you can just say I'm not taking official notice and then go on and make findings of fact, right? So you can't say I'm not doing something that you didn't go on and actually do. Perhaps I'm reading this decision slightly differently because there was a lot of evidence in the record notwithstanding... There was additional, a lot of substantial evidence standard, unlike the Kazerainian case, which had a much more strict standard. But yes, substantial evidence, if some evidence, if a scintilla of evidence supports the findings by this judge, then the courts affirm. In this matter, I think the court should have some perspective, and it was something that Counsel for Mr. Barnett brought up, that he implied that the law for seeking fees and the assessment of fees is uniform between the Ninth Circuit and the federal courts perhaps in Florida, and that's simply not the case. And that's been the problem here, is that this court's standard, and the Ninth Circuit stands alone within the United States for the market rate approach. And it's described by Judge Gee in her decision that the elements of the market rate were not established by Mr. Barnett. She went on, since there is a lot of evidence here in this case, she went on to make a finding based upon the arguments made by Counsel and looking to other sources, which she's allowed to do under the case law of this circuit, to come up with a conclusion. There were reasons to depart from perhaps the hourly rates that might generally be awarded. I believe she said at one point, Judge Gee said that she would award up to $370 an hour under all these circumstances, if not for an issue involving the hearing loss case. And the hearing loss case is where all this began. And in the hearing loss case, the plaintiff made a recalculation of the award to Mr. Barnett, and it was more. And it turned out that the plaintiff was awarded fees at the top of the range when, at least in this case, his performance didn't warrant it. And that's the kind of decision making that a judge has the discretion to make. Returning to the ultimate outcome, the decision is issued. Yes, a motion for reconsideration can be filed. In the 35 years that I've defended Longshore Act and the related Defense Base Act cases, we've seen plenty of them. Now, there's a rush to get it done if you happen to represent the employer, because we have 10 days from the date of a decision to pay a claimant or incur a 20 percent penalty. And the plaintiff here, of course, is Mr. Barnett. It's not Mr. Kupke. Mr. Kupke's been paid. In this matter, Mr. Kupke could have... Mr. Kupke's lawyer, Mr. Barnett, could have asked for additional time. He could have gone to Judge Gee and say, all these cases have been cited, and I need more time, and it would have been granted. Judge Gee was the chief administrative law judge on the West Coast before her recent retirement and was a very capable jurist. But if Mr. Barnett had followed the rules, if he had worked to establish a market rate for South Florida, as he's always alleged that South Florida is the market, then the cases that Judge Gee mentioned would have been argued by Mr. Barnett. And so he is really not well-placed to complain about being surprised by or not knowing about these cases if he was doing his job to apply for fees within... To carry his initial burden under Christensen. Yes, Your Honor. I mean, you're arguing he didn't carry his initial burden in the first place. No, and so failing to do, and failing also later to move for a timely reconsideration, he's waived it. You would say waiver as opposed to harmless error? It was harmless error by the AOJ to reach the outcome that she did if it was improper. I don't believe it was. But if it was improper, yes, it was harmless error. And the judge was placed in the position of looking for what work pays for in South Florida because of the failure of the Plaintiff Council to provide the data necessary to establish a Ninth Circuit fee application. I see that all my time is up. If you all have any questions, I'd be happy to answer them. No, thank you very much, Counsel. Thank you. Thank you, Counsel. You went over your time. I'm aware. There was a new argument I came to present. Okay, I'll give you 30 seconds to come up and address it. The proposition that Mr. Barnett's original application did not meet the initial burden of proof which this Court has said the fee-seeking attorney must meet, I think is incorrect because I think the Court's own satisfactory evidence to support the rates claimed, there was lots of evidence presented to support the rates claimed, and it's convincing, but that's not part of the initial burden. It's supposed to be an objective determination of whether this evidence is sufficient on its face, not as evaluated by the judge. All right. Thank you, Counsel. Kipke v. Director of the Office of Workers' Compensation Programs is submitted.
judges: Wardlaw, Nguyen, Hunsaker